UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| John C. Jahrling, | |
| Debtor. | Case No. 12 B 50628 |
| Estate of Stanley Cora, | |
| Plaintiff, | Adv. No. 13 A 00688 |
| v. | |
| John C. Jahrling, | Hon. Jacqueline P. Cox |
| Defendant. | |

**Memorandum Opinion (dkt. nos. 34, 44)**

This matter is before the Court on Plaintiff's Partial Motion for Summary Judgment ("Motion") and Defendant's Cross-Motion for Summary Judgment ("Cross-Motion"). For the reasons stated herein, the Court grants in part and denies in part Plaintiff's Motion. Defendant's Cross-Motion is denied in part and granted in part.

I. **Jurisdiction and Procedure**

The Court has jurisdiction to entertain this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter involves a core proceeding under 28 U.S.C. § 157(b)(2)(I): determination as to dischargeability of a particular debt.

II. **Background**

On December 28, 2012, John C. Jahrling (the "Debtor") filed a voluntary petition for relief under Title 11, Chapter 7 of the United States Bankruptcy Code (the "Code").

On May 10, 2013, the Estate of Stanley Cora, (the "Plaintiff") filed an adversary proceeding objecting to Debtor's discharge pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), 727(a)(3) and 727(a)(5). Plaintiff subsequently filed an Amended Adversary Complaint on May 31, 2013 (the "Amended Complaint"). The allegations herein stem from a 2007 state court judgment entered in favor of Plaintiff against the Debtor, in the Circuit Court of Cook County, Illinois, Chancery Division, Case No. 05 CH 12099.

Each party's motion for summary judgment asserts that the uncontested facts support entry of summary judgment in its favor.

### III.   Standards

#### A. Summary Judgment

Summary Judgment is appropriate when the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056). On a motion for summary judgment, the court must decide whether, "based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (internal citation omitted). "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court must draw all reasonable inferences in the light most favorable to the non-moving party. *McKinney v. Cadleway Properties, Inc.* 548 F.3d 496, 499-500 (7th Cir. 2008).

IV. Discussion

A. Uncontested Facts.

The following undisputed facts are drawn from the parties' pleadings. Debtor-Defendant, Jahrling, is an attorney licensed to practice law in the State of Illinois; he is currently in good standing. (Def. SOF, ¶ 6.)

Stanley Cora ("Stanley") was an individual, at all relevant times, residing in the State of Illinois. Stanley passed away on May 10, 2006. (Def. SOF, ¶ 8.)

The Estate of Stanley Cora is the Plaintiff in this Adversary Proceeding. Def. SOF, ¶ 10.

In early 2003, Debtor was contacted by Walter Rywak ("Mr. Rywak") to assist with the residential real estate closing of Stanley's home located at 855 N. Francisco, Chicago, Illinois (the "Property"). (Def. SOF, ¶¶ 12, 15.) Mr. Rywak represented the purchasers of the Property. (Def. SOF, ¶ 15.)

Debtor was unable to communicate with Stanley because Debtor did not speak, read, write or understand Polish and Stanley did not speak or read English. (Def. SOF, ¶ 18.)

Debtor prepared a Warranty Deed, a Closing Statement, a Cook County Real Estate Transfer Declaration, a PTAX-203 Illinois Real Estate Transfer Declaration and a Deceased Joint Tenancy Affidavit for the Closing. (Def. SOF, ¶ 14.)

The Debtor, Stanley, Mr. Rywak and the purchasers of the Property attended the April 2003 closing. (Def. SOF, ¶ 15.)

In 2003, a complaint was filed with the Illinois Attorney Registration and Disciplinary

Commission ("ARDC") by Stanley's caretaker alleging that Debtor made a mistake in preparing a deed conveying the Property to Purchasers. (Pl. SOF, ¶ 11; Def. SOF, ¶ 26.) In particular, the Plaintiff alleged that Debtor did not protect Stanley's interest by allowing the Property to be sold for less than what Stanley believed the Property to be worth. (Def. SOF, ¶ 26.)

On September 17, 2003, the ARDC concluded its investigation of the Debtor and determined that disciplinary proceedings were not warranted. (Def. SOF, ¶ 30.)

In 2005, Plaintiff filed a lawsuit captioned *Cora v. Demkov, Koval and Jahrling*, Case No. 05 CH 12099, in the Circuit Court of Cook County, Chancery Division ("State Court suit"). (Def. SOF, ¶ 35; Pl. SOF, ¶ 1.) Therein, Plaintiff asserted claims stemming from the 2003 real estate closing for rescission and injunctive relief, fraudulent inducement and legal malpractice. *Id.*

On October 2, 2007, a trial was conducted during which the Debtor testified and was represented by an attorney other than himself. (Pl. SOF, ¶¶ 6, 9.)

At the close of evidence, the state court entered judgment against Debtor for $68,000. (Pl. SOF, ¶ 9.) On October 11, 2007, the judgment was subsequently reduced to $33,000 plus costs of $1,992.90, and reduced again to $26,000 plus costs on December 3, 2007 (the "State Court judgment"). (Pl. SOF, ¶ 9; Def. SOF, ¶ 36; Def. SOF, Exhibits 7, 9-10.)

Plaintiff is a creditor of the Debtor with a claim in the amount of $26,000, plus costs, arising from the State Court judgment. (Def. SOF, ¶ 11.)

*Debtor's Inheritance*

In 2003 and 2004, Debtor received an inheritance from his mother ("Mother") which included: cash of $60,860.07; 85 shares of ExxonMobile stock; 70 additional shares of ExxonMobile stock; 160 shares of PerkinsElmer stock; 5 shares of Dominion Resources stock; 23 shares of Exelon stock; and 240 shares of Disney stock (the "Inheritance"). (Pl. SOF, ¶ 12;

Def. SOF, ¶ 31.)

### B.    Analysis of Section 523(a)(4) Claim

Count I of the Amended Complaint asserts a claim under § 523(a)(4) of the Code. Section 523(a)(4) excepts from discharge debts arising from a fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4). To establish a claim under this section, the plaintiff must establish that (1) the debtor acted as a fiduciary to the creditor at the time the debt was created, and, (2) that the debt was caused by fraud or defalcation. *In re Berman*, 629 F.3d 761, 766 (7th Cir. 2011). "The existence of a fiduciary relationship under section 523(a)(4) is a matter of federal law." *Berman*, at 767. The Seventh Circuit recognizes a fiduciary relationship as "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000) (citing *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994)). The term "fiduciary duty" applies in circumstances which, "while not involving trusts in a formal sense, seemed to call for the imposition of the same high standard." *In re Marchiando*, at 1115. Thus, "[a] lawyer is deemed the fiduciary of his client, even if he does not manage a fund entrusted to him by the client." *Id.*

Fraud for purposes of § 523(a)(4) requires intentional deceit. *In re Bauman*, 461 B.R. 34, 45 (Bankr. N.D. Ill. 2011). "'Defalcation' means 'the misappropriation of funds held in trust for another in any fiduciary capacity and the failure to properly account for such funds.'" *Bauman*, at 45. Defalcation includes a culpable state of mind requirement involving knowledge of, or reckless conduct. *Bullock v. Bankchampaign*, 133 S.Ct. 1754, 1759 (2013).

#### 1.    Collateral Estoppel

In its Motion, Plaintiff relies on the doctrine of res judicata, arguing that the judgment entered in the State Court suit precludes the Debtor from re-litigating the issue of whether an attorney-client relationship existed between Debtor and Stanley. Res judicata, which bars the relitigation of identical claims is not applicable to actions determining the dischargeability of a

debt. *In re Brown v. Felson*, 442 U.S. 127,138 (1979). However, collateral estoppel or issue preclusion, does apply to non-dischargeability actions. *In re Brown*, at 139 n.10. The Court must now decide whether collateral estoppel is applicable herein.

Collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Dexia Credit Local v. Rogan*, 629 F. 3d 612, 628 (7th Cir. 2010). Because the order sought to be given preclusive effect was issued by an Illinois state court, Illinois collateral estoppel law governs. *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002). Under Illinois law, the elements of collateral estoppel are: (1) the issue decided in the prior proceeding must be identical to the issue in the current action; (2) the party against whom the estoppel is asserted must have been a party or in privity with a party to the prior case; (3) there must have been a final judgment on the merits in the prior action. *Colemichael Invs., LLC v. Burke (In re Burke)*, 398 B.R. 608, 622 (Bankr. N.D. Ill. 2008) (internal citation omitted). "In order for a previous judgment to be conclusive, it must appear clearly and certainly that the identical and precise issue was decided in the previous action." *In re Burke*, at 623.

The Debtor counters that the state court judgment lacks preclusive effect, because the orders entered lack detailed findings that would enable this court to determine which issues were actually litigated. In support, Debtor cites to *United Nat'l Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 219 (Bankr. N.D. Ill. 1993) (internal citation omitted), where the bankruptcy court declined to give preclusive effect to a state court judgment because the record was devoid of transcripts or detailed findings of fact. Here, however, the opposite is true. Following a trial on the merits, the state court judge specifically found that "there existed an attorney/client relationship." *See* State Court Trial Transcript, October 2, 2007, dkt. no. 57, Ex. 3.

Judge Mason found, in part:

I have heard the evidence and examined the documents. The claim remaining here today after Plaintiff's settlement with the title company is a malpractice claim against John Jahrling for negligence in connection with the closing on the decedent's real estate . . .

-6-

> The Defendant has disputed the existence of an attorney/client relationship and argued that even if such a relationship existed, he breach [sic] no duty to Mr. Cora. Transcript, pp. 145-146.
>
> [I] find Mr. Jahrling not credible in his denials that he represented Cora. Transcript, p. 146, lines 7-9.
>
> Mr. Jahrling admitted in his deposition that he gave Mr. Cora advice, that Mr. Cora, according to him did not follow. He listed himself as the seller's attorney in documents at the closing. *Id.*, p. 146, lines 18-21.
>
> He listed himself as the seller's attorney in documents at the closing. If he was hired nearly [sic] as a scribner by Mr. Rywak to prepare documents in connection with the closing, there would have been no reason for him to list himself as the seller's lawyer, which he did. *Id.*, pp. 146-147.
>
> I find that there existed an attorney/client relationship between Mr. Jahrling and Mr. Cora. *Id.*, p. 147, lines 3-5.

It is clear from the record in the state court proceeding that specific factual findings were made as to Debtor's status as Stanley's attorney. The issue sought to be precluded herein, the existence of an attorney-client relationship between Stanley and the Debtor, is the same in both the state court and the instant adversary proceeding. The remaining requirements of collateral estoppel are also satisfied. Both the State Court suit and the adversary proceeding involve the same parties: the Estate of Cora Stanley and Debtor, John C. Jahrling. Finally, following a trial on the merits, a final judgment was entered against Debtor in the State Court suit.

Debtor is therefore precluded from denying his status as Stanley's attorney in the real estate transaction as that issue was already litigated and adjudicated to a final judgment in the prior state court proceeding.

### 2. Summary Judgment on the Issue of Fraud/Defalcation

Plaintiff next argues that it is entitled to summary judgment as to the second element of § 523(a)(4) based on the record in the state court proceedings. The Court disagrees. In *Bullock*, the United States Supreme Court instructed that a finding of defalcation under § 523(a)(4)

requires a mental state of actual knowledge or recklessness. *Bullock*, at 1759. Nothing in the state court judgment orders or transcript suggests that the state court made specific factual findings that Debtor acted with an intent to deceive or that his acts or omissions were grossly reckless. Nor do the parties' statements of uncontested facts support such a finding. The record is devoid of any factual findings relative to Jahrling's state of mind, or whether his acts or omissions were a "gross deviation from the standard of conduct that a law-abiding person would observe" in Debtor's shoes. *Bullock*, at 1760.

Thus, the Court determines that a genuine issue of material fact exists as to whether Debtor's acts or omissions constitute fraud or defalcation. Those are contested factual issues that must be determined by a trial on the merits.

Plaintiff's Motion for Summary Judgment as to Count I is granted as to Debtor's status as an attorney for Stanley. Debtor's Motion for Summary Judgment as to Count I is Denied. The existence of an attorney/client relationship between Stanley and the Debtor has been decided in the State Court suit. Debtor is precluded from re-litigating that issue herein. A trial on the merits is required to determine whether Jahrling had the requisite state of mind to support Plaintiff's § 523(a)(4) claim.

### C.     Section 523(a)(6) Claim

Count II of the Amended Complaint asserts a claim under § 523(a)(6) of the Code. Section 523(a)(6) excepts from discharge debts for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "An injury is willful within the meaning of section 523(a)(6) only if intended; if it's the result but not the *intended* result of an intentional act, the debt arising from the injury is dischargeable . . . ." *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012) (internal citation omitted). In *Jendusa-Nicolai*, the Seventh Circuit explained that "a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no

legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Id.* at 324. Because a debtor will rarely admit to engaging in willful and malicious conduct, those requirements may be inferred by the surrounding circumstances. *In re Burke*, 398 B.R. at 626. Whether a debtor acted willfully and maliciously is a question of fact reserved for the trier of fact. *Id.* at 626.

### 1. Fraudulent Transfer Claim Under the Illinois Fraudulent Transfer Act.

The essence of Plaintiff's § 523(a)(6) claim is that after the Debtor received a sizeable inheritance from his Mother in 2004, he engaged in efforts to hide assets and frustrate collection efforts in the State Court suit. Plaintiff also alleges that the Debtor knew as early as August 2003 of the estate's claims against him, by virtue of the complaint filed with the ARDC. (Pl. SOF, ¶ 11, dkt. no. 34.) Plaintiff thus contends that Debtor's efforts to hide assets were fraudulent transfers under the Illinois Fraudulent Transfer Act (the "Act").

Debtor responds in his Cross-Motion that the asserted fraudulent transfer claim is time-barred. In the alternative, Debtor argues he is entitled to summary judgment on Count II because the Plaintiff has not alleged facts establishing that Debtor disposed of the Inheritance with the intent to hinder or delay collection of a judgment.

#### a. Requirements of a Claim Under Illinois Fraudulent Transfer Act

The Court will first address Debtor's defense that Plaintiff's fraudulent transfer claim is time barred.

740 ILL. COMP. STAT. 160/5(b) provides that:

> (a) a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>> (1) with the actual intent to hinder, delay, or defraud any creditor of the debtor.

740 ILCS 160/5(a)(1) (2012).

Section 10(a) of the Act mandates that a fraudulent transfer claim brought under the Act be filed "within 4 years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;" 740 ILCS 160/10(a) (2012).

### b. The Timeliness of Fraudulent Transfer Claim

The parties agree that in November 2004, Debtor received an Inheritance from his Mother. Pl. SOF, ¶ 12; Def. SOF, ¶ 31. They differ, however, on when Plaintiff became aware of or discovered the alleged transfers. In his Cross-Motion, Debtor argues that as of October 29, 2007, the date of a citation proceeding in the State Court suit, Plaintiff discovered the existence of the Inheritance and the alleged transfers. He thus concludes that Plaintiff's claims are time barred under Section 10(a) of the Act. (Mem. of Law in Support of Def. Cross-Motion, p. 11, dkt. no. 44.) According to Plaintiff, however, the estate did not learn of the questionable transfers until April 4, 2013, the date of Debtor's examination under Fed. R. Bankr. P. 2004. (Pl. Additional SOF, ¶ 3, dkt. no. 55.) Because a genuine material factual dispute exists as to when the transfers were discovered, the Court declines to enter summary judgment in favor of Debtor on this issue.

### c. Issues of Fact

Turning to the merits of the fraudulent transfer theory, the Plaintiff submits that summary judgment is appropriate as to its § 523(a)(6) claim because the undisputed facts show that Debtor hid assets with the intent to hinder creditors to benefit himself.

Debtor counters that he is entitled to summary judgment because the Plaintiff's assertion that he hid assets and failed to cooperate in post judgment collection efforts do not amount to fraud. Rather, the Debtor posits that this "post-judgment activity is in the nature of discovery." (Mem. of Law in Support of Def. Cross-Motion for Summary Judgment, p. 12.) Debtor also explains that he used portions of the Inheritance to make mortgage payments, expenses for which

he asserts he is responsible under the Illinois Family Expense Act. 750 ILCS 65/15 (2012). (Def. Mem. of Law, p. 12.) The Court determines that there are material issues of fact that preclude entry of summary judgment on this theory.

In Count II of the Amended Complaint, Plaintiff alleges that any transfer made by the Debtor of assets received from the Inheritance are fraudulent transfers under the Illinois Fraudulent Transfer Act. (Amended Complaint, ¶¶ 57-61.) As Debtor acknowledges in his Cross-Motion, a fraudulent transfer based on an actual intent to hinder, delay or defraud a creditor can support a § 523(a)(6) claim. *See In re Fairgrieves*, 426 B.R. 748, 758 (Bankr. N.D. Ill. 2010) ("[A] fraudulent transfer based on actual intent to hinder delay or defraud a creditor can support a Section 523(a)(6) claim."). "Section 5(a)(1) of the [Illinois] UFTA applies to 'fraud in fact' or actual fraud, and the moving party must prove that there was a specific intent to hinder, delay or defraud." *In re Gluth Bros. Const., Inc.*, 424 B.R. 368, 374 (Bankr. N.D. Ill. 2009). Whether a debtor possessed the requisite intent under § 523(a)(6) is a subjective inquiry and generally, not suitable for determination by summary judgment. *Anderson v. Stover (In re Stover)*, 2012 WL 4867407, at * 6 (Bankr. S.D. Ind. Oct. 12, 2012).

In support of its Motion, Plaintiff claims that as of 2003, the Debtor knew of Stanley's claims against him due to the complaint filed with the ARDC. (Amended Complaint, ¶ 54.) The Debtor counters, however, that after the ARDC found that disciplinary actions were unwarranted, he had no reason to believe that Stanley or the Plaintiff had claims against him. (Def. SOF, ¶¶ 26, 29-30; Def. Mem. p. 12.)

In Stanley's 2003 letter to the ARDC, he complained that he did not receive proper legal representation from the Debtor, which resulted in a $71,000 loss from the sale of his home. *See* ARDC Request, dkt. no. 38, Exhibit 5, p. 15. The Debtor received a copy of Stanley's complaint sometime thereafter. *See* dkt. no. 38. Exhibit 5, pp. 5-6, ¶¶ 22-23. The Court finds it questionable that the Debtor, a licensed attorney, would be completely unaware of potential claims against him after receiving Stanley's correspondence. In any event, the issue of whether

-11-

the Debtor still had reason to believe that there may be claims against him when he received the Inheritance is an issue of fact that is best reserved for trial where the Court may consider the credibility and demeanor of witnesses along with other evidence.

In addition to issues of fact relative to the Debtor's state of mind, the parties also disagree on the disposition and timing of transfers of the Inheritance funds. *Compare* Pl. SOF, ¶¶ 13-16 with Def. SOF, ¶¶ 32-33. For example, Plaintiff contends that despite Debtor's initial testimony that funds were deposited in a Northern Trust Account, records subpoenaed from that entity reveal that there were no deposits greater than $5,000 or more made in any account in the Defendant's name. (Pl. Additional SOF, ¶¶ 2-3, 15-16.) Debtor, on the other hand, maintains that between April 2007 and October 2007, he in fact deposited the majority of the stock certificates into an account at Northern Trust Securities. (Def. SOF, ¶ 33, dkt. no. 48.)

In light of the genuine material issues of fact as to whether Debtor had the requisite intent to deceive, the Court finds that neither party is entitled to summary judgment on the § 523(a)(6) claim on this theory.

2. **Failure to Renounce a Will**

Plaintiff also alleges in Count II that the Debtor's refusal to renounce his wife's will as permitted by the Probate Act amounts to a fraudulent transfer.

755 ILCS 5/2-8 provides as follows:

Renunciation of will by spouse.

> (a) If a will is renounced by the testator's surviving spouse, whether or not the will contains any provision for the benefit of the surviving spouse, the surviving spouse is entitled to the following share of the testator's estate after payment of all just claims: 1/3 of the entire estate if the testator leaves a descendant or ½ of the entire estate if the testator leaves no descendant.

755 ILCS 5/2-8 (2012).

Plaintiff argues that the Debtor's refusal to do so is part of a scheme to avoid paying the state court judgment. The Court disagrees.

It is undisputed that the Debtor's wife died on December 2, 2012 leaving a will dated August 18, 2012. (Def. SOF, ¶ 43, dkt. no. 48.) The will left all of her assets to Conrad Jahrling, Debtor's son. (Def. SOF, ¶ 43.) Under the statute, the Debtor could have renounced the will and received one-third of his wife's estate. The Debtor made no such election and has stated that he has no plans to do so. (Def. SOF, ¶ 44; Pl. Additional SOF, ¶ 4.) Because the parties are in agreement regarding the material facts relevant to this issue, the Court must determine whether the Debtor is entitled to entry of summary judgment as a matter of law.

After a diligent search, the Court was unable to find any Illinois authority precisely on point. However, the Court finds *In re Brand*, 251 B.R. 912 (Bankr. S.D. Fla. 2000), cited in Debtor's brief, to be particularly instructive. In *Brand*, a chapter 7 bankruptcy trustee sought to exercise a debtor's right of election to take an elective share in a decedent's estate in place of the debtor for the benefit of the bankruptcy estate. The court opined:

> In order for the Debtor to receive this elective share property interest (making it property of the estate), the Debtor would have to exercise the right of election. The right of election is not a property interest arising from the provisions of a will; instead, it is a right to choose to take a share of the decedent's estate against the express provisions of the will. Even though electing to take an elective share interest results in the creation of a property interest in the debtor, the right of election, itself, is not a property interest of the debtor, and thus, not property of the estate.

*In re Brand*, at 915.

Although *Brand* was decided under Florida law, both Florida and Illinois courts recognize that the right of election is a personal right belonging to the surviving spouse. *See, e.g., Estate of Mondfrans v. Collins*, 2014 IL App (2d) 130205 (noting that the right of the surviving spouse to renounce a will is a personal right. ); *Harmon v. Williams*, 615 So.2d 681, 682 (Fla.1993) (internal citation omitted) ("It is generally accepted that the right of election is personal to the surviving spouse."). Similar to the debtor in *Brand*, the Debtor herein has not exercised his personal right under 755 ILCS 5/2-8 to receive a one-third statutory share of the Inheritance. Thus, no elective share exists. Because the Debtor's right to elect is not property of the estate it

is not within the reach of a trustee or creditor.[1] *In re Brand*, at 915-916. Accordingly, Plaintiff's fraudulent transfer claim under this theory in Count II fails as a matter of law.

### D.    Denial of Discharge Under Section 727(a)

In Count III, Plaintiff alleges that the Debtor's discharge should be denied under §§ 727(a)(3) and 727(a)(5).

Section 727(a)(3) provides:

(a) The court shall grant the debtor a discharge, unless–

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

11 U.S.C. § 727(a)(3).

"The purpose of § 727(a)(3) is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999) (internal citation omitted). "Section 727(a)(3) requires as a precondition to discharge that debtors produce records which provide creditors 'with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.'" *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (internal citation omitted).

---

[1] Section 541(a)(1) of the Code, which governs property of the bankruptcy estate, provides that such property is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541. Subsection (5) provides that "property of the estate includes property the debtor acquires or becomes entitled to acquire within 180 days after such date (A) by bequest, devise, or inheritance." 11 U.S.C. § 541(5)(A).

The court may deny the debtor a discharge under § 727 (a)(5) if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). Under this section, "the creditor has the initial burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors." *In re Shuadt*, 2012 WL 909299, at * 8 (Bankr. N.D. Ill. Mar. 16 2012) (citation omitted). The burden then shifts to the debtor to satisfactorily explain the loss. *In re Shuadt*, at * 8. The determination of what constitutes a 'satisfactory' explanation is left to the discretion of the court. *Nuvell Credt Corp.* v. *Ross* (*In re Ross*), 359 B.R. 690, 700 (Bankr. N.D. Ill. 2007).

In its Motion, the Plaintiff complains that during a 2009 citation examination, Debtor initially could not remember where he deposited the cash portion of his Inheritance, but ultimately told Plaintiff those funds were with "Northern Trust." During Debtor's bankruptcy case, however, he stated that no money from the Inheritance had been deposited into a "Northern Trust" account. (dkt. no. 38, Exhibit 5, p. 8.) The record suggests that the Plaintiff's difficulty in obtaining relevant documents may be due, in part, to Plaintiff requesting information regarding "Northern Trust" as opposed to "Northern Trust Securities, Inc." *See* Requests to Admit, ¶¶ 38-39, dkt. no. 38. Adding to the confusion is Defendant's assertion that between November 2003 [sic] and December 2004, the cash portion of the Inheritance was deposited at Northwest Community Credit Union. (Def. SOF, ¶ 32, dkt. no. 48, Ex. 1.)

Although the record suggests that Debtor may have been less than forthcoming with information pertaining to the location and disposition of his assets, the Court declines to enter summary judgment on the § 727(a)(3) claim given the genuine issues of material facts that exist pertaining to the Debtor's financial records. *See* dkt. no. 56, Exhibit 13, Transcript, Rule 2004 Exam, April 4, 2013, p. 29 lines 6-24; p. 30, lines 1-24; pp. 41-42.

As to the § 727(a)(5) claim, the Plaintiff has met its initial burden of showing that Debtor at one time had substantial assets that are no longer available to creditors. It is undisputed that in

November 2004, Debtor received a $60,860.07 cash Inheritance from his deceased Mother. (Pl. SOF, ¶ 12; Def. SOF, ¶ 31.) Debtor admits to having used a portion of those funds to pay the mortgage, household expenses, and to refinance a car loan. (Def. Mem. pp. 13-14.) Debtor also admits that he opened a brokerage account in the amount of $10,000 with Northern Trust Securities. (*See* Def. SOF, Exhibit, A, ¶ 30.)

The burden now shifts to Debtor to satisfactorily explain the loss of those assets. Debtor admits that he had difficulty locating financial records pertaining to the Inheritance but maintains that he has turned over all bank records he was able to locate. (Def. Mem., p. 18.) He argues that his financial affairs "from so long ago" have no relevance to his current financial affairs. (Def. Mem., p. 16.) The Court disagrees. The Debtor's financial records have a direct bearing on his current financial condition. The determination of whether the Inheritance funds have been fully exhausted may shed light on whether the Debtor has funds available to pay creditors.

Denial of a discharge under § 727 is a drastic remedy. In light of the many material factual discrepancies, the Court declines to enter summary judgment on Plaintiff's § 727 claims.

V.     **Conclusion**

For the reasons stated above, the Court grants in part and denies in part Plaintiff's Motion for Summary Judgment. Summary Judgment is granted in favor of Plaintiff on the issue of whether Debtor had an attorney-client relationship with the decedent, Stanley Cora. The Court finds that the Debtor was Stanley's attorney at all times in issue.

The Court also grants in part and denies in part Defendant's Cross-Motion for Summary Judgment. Summary Judgment is granted in favor of Defendant on Plaintiff's fraudulent transfer theory in Count II based on Debtor's refusal to renounce his deceased wife's will.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will enter a separate judgment order

Dated: April 15, 2014                ENTER:

_____

Jacqueline P. Cox
U.S. Bankruptcy Judge