**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| John C. Jahrling, | ) | |
| | ) | |
| Debtor. | ) | Case No. 12 B 50628 |
| ——————————————— | ) | |
| | ) | |
| Estate of Stanley Cora, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 13 A 00688 |
| | ) | |
| v. | ) | |
| | ) | |
| John C. Jahrling, | ) | Hon. Jacqueline P. Cox |
| | ) | |
| Defendant. | ) | |

**Amended Memorandum Opinion**

**I.    Jurisdiction**

Bankruptcy courts have statutory authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). Core proceedings include determinations of the dischargeability of a particular debt and objections to discharge, matters at issue herein. 28 U.S.C. § 157(b)(2)(I) and (J).

The district courts have original and exclusive jurisdiction of all cases under title 11, the Bankruptcy Code. 28 U.S.C. § 1334(a). The district courts also have original but not exclusive

-1-

jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under

title 11. 28 U.S.C. § 1334(b). The district courts may refer cases under title 11, and any or all

proceedings arising under title 11 or arising in or related to a case under title 11, to the

bankruptcy judges for their district. 28 U.S.C. § 157(a). Pursuant to that authority the District

Court for the Northern District of Illinois has referred its bankruptcy cases to the Bankruptcy

Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

## II.     Facts and Background

This matter came before the Court for trial of an Amended Adversary Complaint

("Amended Complaint") filed by the Estate of Stanley Cora against the Defendant, Debtor John

C. Jahrling ("Jahrling" and the "Debtor"). However, the appropriate party plaintiff should have

been Margaret Kosinska, Executor of the Estate of Stanley Cora because under Illinois and

federal law, only the administrator or executor of a decedent's estate can maintain an action on

behalf of the decedent. *Abiola v. Abubakar,* 2003 WL 22012220, at *2 (N.D. Ill. 2003); *Menerey

v. Citizens First Nat'l Bank,* 160 Ill. App. 3d 223, 225-26 (Ill. App. Ct. 3d Dist. 1987); Federal

Rule of Civil Procedure 17(a)(1)(A) and (B). The Court notes that the issue of whether the

Estate of Stanley Cora has standing to bring this adversary proceeding was not addressed by the

parties in pleadings or during the trial. Any standing objections or concerns have been waived.

*National Therapeutic Assocs. v. Concept Rehab, Inc.,* 2000 WL 1468314, at *1 (N.D. Ill. Sep.

29, 2000) ("However, where-as-here- the standing issue arises under a statute the issue is subject

to waiver."). Thus, the Court will rule on the merits of the allegations contained herein.

On December 28, 2012, John C. Jahrling filed a voluntary petition for relief under

-2-

Chapter 7 of the Bankruptcy Code (the "Code").

On May 10, 2013, the Estate of Stanley Cora, (the "Plaintiff" or the "Estate") filed the adversary proceeding ("Adv. Pro. 13-688") herein objecting to the discharge of its particular debt under Code sections 523(a)(4) and 523(a)(6).  The Estate also sought to deny the Debtor a discharge of all of his debts under Code sections 727(a)(3) and 727(a)(5).  The Estate filed its Amended Complaint Objecting to the Dischargeability of Certain Debts and to the Overall Discharge (the "Amended Complaint") on May 31, 2013..

The Estate seeks to except from discharge a $26,000 state court legal malpractice judgment entered against Jahrling in 2007.

The allegations herein stem from a 2007 state court judgment in the amount of $26,000 entered by Judge Mary Anne Mason in favor of the Estate of Stanley Cora and against the Debtor, in the Circuit Court of Cook County, Illinois, Chancery Division, Case No. 05 CH 12099.

A trial of the Amended Complaint was heard by this Court on July 9-10, 2014.  The following facts are taken from the parties' pleadings and the evidence presented at trial.

Debtor John C. Jahrling is an attorney.  He was licensed to practice law in Illinois in 2003 when he was contacted by attorney Walter Rywak ("Rywak") to assist with an April 10, 2003 residential real estate closing where Stanley Cora was selling his home to Rywak's clients, Bohdan Demkov ("Demkov") and Nadja Koval ("Koval"), who are siblings.  Debtor contends that he was brought in only to prepare the closing documents: a warranty deed, a closing statement, a Cook County Real Estate Transfer Declaration, a PTAX-203 Illinois Real Estate Transfer Declaration and a Deceased Joint Tenancy Affidavit, not to represent the seller, Stanley

-3-

Cora, who was 90 years of age at the time.  The Estate alleges that he was Stanley Cora's

attorney.  Jahrling denies that he served as Cora's attorney.  However, the closing statement,

which Jahrling admits preparing, lists Jahrling as the seller's attorney.  *See* Adv. Pro. 13-688,

Defendant's Statement of Additional Undisputed Facts, Group Exhibit C, dkt. no. 48, page 4.

    In the underlying state court suit, Cora sued the purchasers for Rescission, and Fraudulent

Inducement; he sued Jahrling for legal malpractice.  His complaint (and an amended count)

alleged that he met Demkov a few months before the transaction when Demkov came to his

home to bid on a roof repair project which he did not get.  It was also alleged that Demkov

returned and offered to purchase Cora's property for $35,000, and promised to allow Cora to live

in the smaller apartment upstairs rent-free for life.  *See* Adv. Pro. 13-688, Exhibits 1 and 3, dkt.

no. 35.  It has been alleged throughout these proceedings in both state and federal courts that

Stanley Cora wanted to sell the property subject to his retention of a life estate therein.

    The April 10, 2003 transaction complained of did not provide for the retention of a life

estate by Stanley Cora.  After his home was sold for $35,000, he was soon faced with an eviction

action.

    Jahrling testified at the trial of this matter that Stanley Cora spoke Polish only and that

because he did not speak Polish, he did not speak to Cora directly.  He communicated with Cora

through the purchasers' attorney, Walter Rywak, the person who asked him to participate in the

closing.  He testified that he did not know that Cora wanted to retain a life estate for himself.

Jahrling was paid $400 by check from Rywak for his work at the closing.  *See* Exhibit 2 to

Exhibit A, Adv. Pro. 13-688, dkt. no. 48.

    On October 2, 2007, Judge Mason ruled that even though Rywak paid Jahrling's fee,

-4-

Jahrling was Cora's attorney and as such he owed Cora a duty to know what it was that Cora

tried to accomplish.  Judge Mason noted that when Jahrling responded to a complaint Cora filed

against him at the Illinois Attorney Registration and Disciplinary Commission, Jahrling did not

deny that he had represented Cora at the closing.  She also ruled that it was unreasonable, per se,

for an attorney who cannot communicate with his client to rely on counsel for the opposing party

for all of his information regarding the transaction.  She also ruled that Attorney Rywak got all of

his information from the purchasers and that effectively Jahrling knew nothing from his client.

*See* October 2, 2007 Transcript of Judge Mason's Ruling, p. 147, Plaintiff's Trial Exhibit No. 9.

Judge Mason noted that Jahrling admitted at his deposition that he gave advice to Cora.

She also ruled that Cora sold a home worth $106,000 for one-third of its market value, did not

get the expected life estate and wound up paying for use and occupancy after it was sold.  She

found that Jahrling's failure to fulfill his responsibilities proximately caused Cora's damages,

noting that later that year Demkov and Koval sold the property for $145,000.  The original

judgment entered damages in favor of Cora in the amount of $68,000 on the legal malpractice

claim.  The judgment amount was reduced twice: once to $33,000 and finally to $26,000, the

debt at issue herein. *Id*.

Judge Mason's ruling was based on a negligence claim.


## III.   Discussion

### A.  Res Judicata and Collateral Estoppel

In its Motion for Summary Judgment herein the Estate asked the Court to rule that res

judicata precluded Jahrling from re-litigating the issue of whether an attorney-client relationship

existed between him and Stanley Cora. Res judicata bars the re-litigation of identical claims when the same parties are involved in a later case after a final judgment has been entered in the earlier matter. *Montana v. U.S.*, 440 U.S. 147, 153 (1979) ("Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."). The application of res judicata to dischargeability actions is improper as such claims can arise only in the context of a bankruptcy proceeding. They involve determining, for example, whether a debt was incurred by fraud (section 523(a)(2)), by defalcation by a fiduciary (section 523(a)(4)), whether the debt was listed or scheduled (section 523(a)(3)), or whether the debt is a domestic support obligation (section 523(a)(5)). Because the issues in dischargeability actions extend beyond liability, claim preclusion under res judicata does not apply. As noted by the Seventh Circuit in *Matter of Bulic,* 997 F.2d 299, 305 n.7 (7th Cir. 1993), however, "the narrower doctrine of collateral estoppel . . . does apply to bankruptcy cases."

In ruling on the Plaintiff's Motion for Summary Judgment and the Defendant's Cross-Motion for Summary Judgment, this Court applied the principle of collateral estoppel, or issue preclusion, in ruling that John C. Jahrling was Stanley Cora's attorney at the April 10, 2003 closing. *See* April 15, 2014 Memorandum Opinion, Adv. Pro. 13-688, dkt. no. 69, p.5. Collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Dexia Credit Local v. Rogan,* 629 F.3d 612, 628 (7th Cir. 2010). Because the ruling sought to be given preclusive effect was issued by an Illinois state court, Illinois collateral estoppel law controls. *Brokaw v. Weaver,* 305 F.3d 660, 669 (7th Cir. 2002).

Under Illinois law, the following have to be shown for collateral estoppel to apply: (1) the issue decided in the prior proceeding must be identical to the issue in the current action; (2) the party against whom the estoppel is asserted must have been a party or in privity with a party to the prior case; (3) there must have been a final judgment on the merits in the prior action. *Colemichael Invs., LLC v. Burke (In re Burke),* 398 B.R. 608, 622 (Bankr. N.D. Ill. 2008). "In order for a previous judgment to be conclusive, it must appear clearly and certainly that the identical and precise issue was decided in the previous action." *In re Burke,* at 623. The issue is identical herein - whether Jahrling represented Cora; the parties are identical - Jahrling and Cora, as represented by his estate; and the issue of whether Jahrling represented Cora was resolved in a final judgment on the merits - the $26,000 judgment. In the earlier state court ruling, Judge Mason found that Jahrling was Stanley Cora's attorney at the real estate closing. Her ruling that Jahrling was Stanley Cora's attorney satisfies each of the elements of collateral estoppel and therefore has preclusive effect in this proceeding.

Jahrling maintained throughout his trial testimony that he was not Cora's attorney at the trial of this adversary proceeding even though this Court had ruled that the state court's finding on that issue was binding. Denials made at trial that he represented Cora lacked credibility; he failed to convince this Court that he was not Cora's attorney.

## B. The Section 523(a)(4) Claim

Count I of the Amended Complaint seeks a ruling excepting the $26,000 legal malpractice debt from discharge under 11 U.S.C. § 523(a)(4) which excepts from discharge debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. The creditor seeking

this relief has to establish that (1) the debtor acted as a fiduciary to the creditor at the time the debt
was created, and, (2) that the debt was caused by fraud or defalcation.  The term 'fiduciary duty'
applies in circumstances which, "while not involving trusts in a formal sense, seemed to call for
the imposition of the same high standard."  *In re Marchiando,* 13 F.3d 1111, 1116 (7th Cir. 1994).
The Seventh Circuit also noted that fiduciary relationships involve "a difference in knowledge or
power between fiduciary and principal which . . . gives the former a position of ascendancy over
the later"  and that "a lawyer is deemed the fiduciary of his client, even if he does not manage a
fund entrusted to him by the client."  *Id.* at 1115.  Defalcation includes the misappropriation,
embezzlement of money and failure to meet a promise or expectation.  Black's Law Dictionary
448 (8th ed. 2007).

### 1.    Jahrling's Violations of the Rules of Professional Conduct

After reviewing the pleadings and evidence presented at trial, the Court determines that
Jahrling's conduct with regard to his representation of Cora violated at least three Illinois Rules of
Professional Conduct ("Rules"), Illinois Supreme Court Rules, Article VIII, 2002.

In 2003 Rule 1.1(a) provided:

> Competence  -  A lawyer shall provide competent representation to a client.
> Competent representation requires the legal knowledge, skill, thoroughness
> and preparation reasonably necessary for the representation.

Illinois Rule of Professional Conduct 1.1(a) (2002).

In 2003 Rule 1.3 provided:

> Diligence - A lawyer shall act with reasonable diligence and promptness in
> representing a client.

Illinois Rule of Professional Conduct 1.3 (2002).

In 2003 Rule 1.4 provided:

> Communication - (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
>
> > (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Illinois Rule of Professional Conduct 1.4(a) and (b)(2002).

Rule 1.1 required Jahrling to prepare for his engagement as Cora's attorney. His preparation consisted of speaking to Cora through the attorney for the opposing parties, the purchasers. Had he taken the time to communicate with Cora to assess the situation he might have discerned whether Cora wanted to retain a life estate in the property. Jahrling acted recklessly in not talking directly and confidently to Stanley Cora.

Rule 1.3 required Jahrling to act with reasonable diligence in representing Cora. Jahrling's conduct at the closing lacked diligence. Diligence requires that an attorney speak with his or her clients. By Jahrling's own admission, he did not speak with Cora, and the evidence reveals that he made no effort to do so. *See* Jahrling's Affidavit, Adv. Pro. 13-688, dkt. no. 48, Ex. A, ¶ 12: ("My first and only communication with the Deceased occurred at the Closing. Our communication was not more than an introduction as the Deceased did not apeak English. I did not privately meet with the Deceased at the Closing.")

Rule 1.4 required Jahrling to reasonably explain the circumstances surrounding the pending sale of his home. He did not do so. Had he explained the circumstances to Cora, he could have been told whether Cora wanted to retain a life estate in the property being sold.

-9-

### 2. Limited Scope Representation

Jahrling testified that his role at the closing was limited to preparing the closing documents, one of which he signed as the seller's attorney; Cora was the seller.  In 2003 Rule 1.2(c) stated: A lawyer may limit the *objectives* of the representation if the client consents after disclosure.  Illinois Rule of Professional Conduct 1.2(c) (2002).

Ten years after the real estate closing in issue, effective July 1, 2013, the Illinois Rules of Professional Conduct were amended to allow lawyers to provide limited scope representation in civil proceedings, as opposed to limiting only the objectives of representation.  Rule 1.2(c) now provides:

> A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.

Illinois Rule of Professional Conduct 1.2(c).

Jahrling was not authorized to provide limited scope representation in 2003.   Because the difference in the provision of limited scope representation as opposed to limiting objectives is vague and difficult to delineate, the Court will not base its ruling herein on whether Jahrling could have legitimately limited what he could do for Cora at the real estate closing in issue.

### 3. Culpability

This Court's findings that Jahrling violated Illinois Rules of Professional Conduct 1.1, 1.3 and 1.4 along with Judge Mason's finding that he was negligent in representing Cora may not be enough, however, to support a denial of discharge of a particular debt for defalcation of a

fiduciary duty. In *Bullock v. BankChampaign, N.A.,* 133 S. Ct. 1754 (2013), the Supreme Court

held that the term "defalcation" as used in section 523(a)(4) of the Code includes a culpable state

of mind requirement involving knowledge of, or gross recklessness in respect to the improper

nature of the relevant fiduciary behavior. There a debtor who served as a nonprofessional trustee

of a trust established for the benefit of the debtor and his siblings borrowed money from the trust

on several occasions. The trust was repaid. His siblings obtained a state court judgment for

breach of fiduciary duty, though that court found that there was no apparent malicious motive on

the debtor's part. The debtor filed for bankruptcy relief. BankChampaign opposed the debtor's

efforts to obtain a discharge of his state-court-imposed debt to the trust. *Bullock,* at 1757. The

bankruptcy court held that because the debt was based on a breach of fiduciary duty, it was non-

dischargeable under section 523(a)(4). The District and Circuit Courts affirmed. The Supreme

Court held that the term defalcation in the Bankruptcy Code includes a culpable state of mind

requirement involving knowledge of, or gross recklessness in respect to the improper nature of the

fiduciary behavior. *Id.* at 1759. Recognizing the differing views of the requisite mental state, the

Supreme Court noted that "In resolving these differences, we note that this longstanding

disagreement concerns state of mind, not whether 'defalcation' can cover a trustee's failure (as

here) to make a trust more than whole." *Id.*

     The Supreme Court explained that:

> where the conduct at issue does not involve bad faith, moral turpitude, or
> other immoral conduct, the term requires an intentional wrong. We include
> as intentional not only conduct that the fiduciary knows is improper but
> also reckless conduct of the kind that the criminal law often treats as the
> equivalent. Thus, we include reckless conduct of the kind set forth in the
> Model Penal Code. Where actual knowledge of wrongdoing is lacking, we

> consider conduct as equivalent if the fiduciary 'consciously disregards' (or
> is willfully blind to) 'a substantial and unjustifiable risk' that his conduct
> will turn out to violate a fiduciary duty.

*Id.*

The Court further noted.

> [t]hat risk 'must be of such a nature and degree that, considering the nature and
> purpose of the actor's conduct and the circumstances known to him, its disregard
> involves *a gross deviation* from the standard of conduct that a law-abiding person
> would observe in the actor's situation.

(emphasis in text).  *Id.* at 1760.

Jahrling's substandard representation of Cora amounted to the level of gross recklessness

as contemplated by the Supreme Court in *Bullock.*  Jahrling, as Cora's attorney, owed him the

duties imposed by the Illinois Rules of Professional Conduct to prepare for the engagement, to

conduct himself with diligence regarding the engagement and to communicate with Stanley Cora

about the engagement.  Jahrling's conduct lacked even a scintilla of diligence - he discussed no

aspect of the closing with Cora.  He did nothing to prepare for the engagement and failed to

communicate with his client about the engagement.

The Estate argues that because Jahrling had considerable experience handling real estate

transactions in the area he should have known that the $35,000 purchase price was too low.  The

Estate suggests that Jahrling went along with Rywak's clients to maintain his relationship with

Rywak.

The Court rejects the Estate's position that Jahrling should have known that the price was

too low.  Neither side presented evidence of what comparable homes in the area sold for in 2003

to show whether the price Cora got for his home was too low.  Nor did either side offer evidence

of the condition of Cora's home.  The home's condition is as relevant as the general market value

of homes in the area in determining what the home should have sold for.

The Court finds that Jahrling's conduct in representing Cora at the sale of his home without

talking to him to discern what Cora wanted and how to accomplish his goal, was a gross deviation

from the standard of conduct that a law-abiding person as well as any Illinois attorney would

observe in Jahrling's situation.  Jahrling consciously disregarded a substantial and unjustifiable risk

that his conduct would violate a fiduciary duty.  *See Pearson v. Howard,* 339 B.R. 913, 921

(Bankr. N.D. Ill. 2006) (discharge of a legal malpractice debt was denied, in part, due to attorney's

failure to communicate with his client -"More importantly, Howard failed to communicate with his

client.").  Jahrling acted recklessly and in brazen disregard of his fiduciary duty when he ignored

his basic duty to communicate with the client, to prepare for the engagement and to pursue his

client's interests diligently.   The Estate has carried its burden of proving by a preponderance of the

evidence that Jahrling violated fiduciary duties owed Stanley Cora.  *Grogan v. Garner,* 498 U.S.

279, 287-88 (1991*)* ("[W]e hold that the standard of proof for the dischargeability exceptions in

11 U.S.C. § 523(a) is the ordinary preponderance-of-the evidence standard.").  The $26,000 legal

malpractice debt will not be discharged because it is based on a defalcation of Jahrling's fiduciary

duty; he failed to do what was expected of him.

### C. Section 523(a)(6) Claim

Count II of the Amended Complaint seeks a ruling excepting the legal malpractice debt

from discharge under Code section 523(a)(6) on several grounds.  That section excepts from

discharge debts for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6).

1.   **Ground 1: Missing Inheritance from Mother and Refusal to Renounce Wife's Will**

The Estate alleges that Jahrling failed to supply information about an inheritance he received from his mother at a Federal Rule of Bankruptcy Procedure 2004 examination and that inheritance funds may have been used to pay down mortgage debt of property deeded to his wife. Evidence heard at the trial refutes these allegations. Since at least 2009 the Estate had the records of Jahrling's financial affairs. The Estate complained that Jahrling's failure to renounce his wife's will to take a share of her probate estate amounted to a fraudulent transfer as his refusal to do so was part of a scheme to avoid paying the $26,000 judgement.

Jahrling's wife died on December 2, 2012 leaving a will dated August 18, 2012. *See* Adv. Pro. 13-688, Defendant's Statement of Facts ("Def. SOF") § 43, dkt. no. 48. The will left all of her assets to Conrad Jahrling, the Debtor's son. Under Illinois law, Jahrling could have renounced the will and received one-third of his wife's estate. The Debtor made no such election and has stated that he has no plans to do so. (Def. SOF, § 44).

After a search of Illinois law, the Court has been unable to find Illinois caselaw directly on point. However, the Court finds *In re Brand,* 251 B.R. 912 (Bankr. S.D. Fla. 2000), cited in the Debtor's brief, to be instructive. In *Brand* a chapter 7 bankruptcy trustee sought to exercise a debtor's right of election to take an elective share in a decedent's estate in place of the debtor for the benefit of the bankruptcy estate. The court opined:

-14-

> In order for the Debtor to receive this elective share property interest
> (making it property of the estate), the Debtor would have to exercise the
> right of election.  The right of election is not a property right arising from
> the provisions of a will; instead, it is a right to choose to take a share of the
> decedent's estate against the express provisions of the will.  Even though
> electing to take an elective share interest results in the creation of a property
> interest in the debtor, the right of election, itself, is not a property interest of
> the debtor, and thus, not property of the estate.

*In re Brand,* at 915.

While *Brand* was decided under Florida law, both Florida and Illinois courts recognize the right of election to be a personal right belonging to the surviving spouse.  *See Estate of Mondfrans v. Collins,* 2014 IL App (2d) 130205, 380 Ill. Dec. 751, 756, 9 N.E.3d 1 (App. Ct. 2d Dist. 2014) (noting that the right of the surviving spouse to renounce a will is a personal right); *Harmon v. Williams,* 615 So.2d 681, 682 (Fla. 1993) (internal citation omitted) ("It is generally accepted that the right of election is personal to the surviving spouse.").  Like the debtor in *Brand,* Jahrling has not exercised his personal right under 755 ILCS 5/2-8 to receive a one-third statutory share of his deceased spouse's probate estate.  Until he makes the election, the property that he could receive cannot be claimed by his creditors or become property of his bankruptcy estate.  Jahrling's right to elect is not property of the estate; it is not within the reach of a trustee or a creditor.  *In re Brand,* at 915-16.  Jahrling has no liability herein for not taking a share of his deceased spouse's estate.  The refusal to take an elective share could be grounded on the tax consequences of such.  It would be unfair to require a person to make an election that could require assumption of a tax burden.

The Estate also alleges that Jahrling should have provided an accounting of how he disposed of the funds he inherited when his mother died.  The Court is satisfied from the evidence heard at trial that Jahrling has accounted for and given to the Estate records of his financial affairs.

-15-

Jahrling has no liability herein regarding a "missing" inheritance from his mother.  Neither the

inheritance nor records of it were concealed.

### 2.  Ground 2: Fraudulent Transfer

The Estate alleges that Jahrling's acts of "putting the inherited assets somewhere they

cannot be located" (Amended Complaint, ¶ 61) was an intentional act to hinder creditors under the

Illinois Uniform Fraudulent Transfer Act ("IUFTA").  The Amended Complaint does not specify

whether the Plaintiff is alleging actual fraud or lack of equivalency while insolvent as the basis of

its allegation that Jahrling made a fraudulent transfer. The IUFTA provides:

> (A) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
> whether the creditor's claim arose before or after the transfer was made or the obligation
> was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) with the actual intent to hinder, delay, or defraud any creditor of the
>> debtor; or
>>
>> (2) without receiving a reasonably equivalent value in exchange for the
>> transfer or obligation, and the debtor:
>>
>> (A) was engaged or was about to engage in a business or a transaction for
>> which the remaining assets of the debtor were unreasonably small in relation
>> to the business or transaction; or
>>
>> (B) intended to incur, or believed or reasonably should have believed that he
>> would incur debts beyond his ability to pay as they became due.

740 ILCS 160/5(a).

The evidence heard at trial does not support this allegation.  The Estate posits that when

Jahrling received a 2004 inheritance after receiving notice of the Estate's first lawsuit, his transfers

of those monies into retirement accounts and use of them for living expenses amounted to

-16-

fraudulent transfers under Illinois law.   The Court disagrees and finds that the Estate has not

carried its burden to prove by a preponderance of the evidence that Jahrling's disposition and use

of the two inheritances were fraudulent transfers.   The evidence of record shows that Jahrling used

the funds for routine expenses.

### a. Fraudulent Transfer Statute of Limitations Defense

Jahrling has asserted a statute of limitations defense.   The IUFTA generally requires that

fraudulent transfer actions be brought within four years of the transfer, or, if later, within one year

after the transfer could reasonably have been discovered by the claimant. 740 ILCS 160/10.

The Estate learned of the 2004 inheritance at least by the time of an October 27, 2009

citation proceeding.  *See* Plaintiff's Rule 56.1 Statement of Material Facts, dkt. no. 38, ¶ 13;

Answer to Amended Adversary Complaint Objecting to the Dischargeablility of Certain Debts and

to the Overall Discharge, dkt. no. 20, p. 17.   The statute of limitations had not expired when the

Estate filed this adversary proceeding on May 10, 2013, five months before the expiration of the

four-year limitation period.

Jahrling posits that the Estate should have filed its fraudulent transfer claim one year after

the October, 2009 citation, pursuant to the discovery provision of Illinois' fraudulent transfer

limitation statute.   The one-year provision is inapplicable.   740 ILCS 160/10 provides that

fraudulent transfer actions have to be brought within four years of the transfer, or if filed four years

after the transfer, within one year after the transfer was or could have reasonably been discovered

by the claimant.   The Estate does not rely on the one-year discovery provision.   Such would be

expected if the Estate had not filed its fraudulent transfer allegation within four years. The Court

declines to dismiss this Amended Complaint, or any part thereof, for being untimely filed.

As to the substance of the Estate's fraudulent transfer allegations, the Court finds that the

Estate has not carried its burden to prove by a preponderance of the evidence that Jahrling's use of

the two inheritances constituted fraudulent transfers. The trial evidence showed that he used the

funds to pay living expenses and to establish retirement accounts which the Estate did not seek

turnover of in the state court case. The Court reaches this conclusion in consideration of the timing

of the deposits and the amount of the expenditures. Jahrling received modest amounts of funds

and used them to maintain the modest standard of living he enjoyed before and after 2003.


### 3.      Ground 3: Refusal to Reveal Income

The Estate argues that Jahrling harmed it by refusing to remit any portion of his income

despite receiving its Citation to Discover Assets. Counsel for the Estate admitted numerous times

while testifying at trial that the Estate did not seek turnover orders in state court, even though it had

records of Jahrling's financial affairs by 2009. The Court declines to find Jahrling's debt

nondischargeable for refusing to reveal income. The evidence presented at trial established that his

income was revealed by virtue of the turnover of the records of his accounts and financial affairs.


### 4.      Ground 4: Pledging his Collateral for Someone Else

The Estate complains that Jahrling intentionally harmed it by purchasing a car for his son,

and titling it in his wife's name. However, the allegation lacks factual specificity and legal

grounds.  The Court can not discern why this alleged conduct justifies denying the discharge of the debt.  The Court will not deny a discharge of the debt for this reason.

None of the Estate's grounds for excepting the legal malpractice debt from discharge under 523(a)(6) are availing.  The conduct alleged is not wilful and malicious.  In *Kawaauhau v. Geiger,* 523 U.S. 57 (1998), the Supreme Court held that under section 523(a)(6) "nondischargeability takes a deliberate or intentional injury, not merely . . . a deliberate or intentional act that leads to injury."  *Id.* at 57.  The debtor has to intend the consequences of his or her conduct, not just the act itself.  The Estate's allegations in Count II alleging a willful and malicious injury and the evidence submitted thereon do not show that Jahrling acted with intent to cause an intentional injury.  He deposited and spent the inheritances in a manner consistent with his standard of living at the time.  This fails to show intent to cause a specific injury.  The fraudulent transfer allegation covers the same grounds, that he put the inherited assets beyond the Estate's reach.  The Court acknowledges that fraudulent transfer conduct based on actual intent to hinder, delay or defraud a creditor can form the basis for a section 523(a)(6) exception to discharge.  *See Mutual Mgmt. v. Fairgrieves,* 426 B.R. 748, 759 (Bankr. N.D. Ill. 2010).  The Estate has not shown that Jahrling's conduct in maintaining his modest standard of living was done to hinder, delay or defraud creditors or that the transfers made lacked equivalency while insolvent.

### F.  Objections to Discharge - Sections 727(a)(3) and 727(a)(5)

At the conclusion of the Estate's case in chief the Court granted Jahrling's motion for a judgment that the Estate had not met its burden of proof on its section 727(a)(3) and 727(a)(5) claims.

-19-

Count III of the Amended Complaint asks that a discharge be denied due to Jahrling's alleged refusal to provide information under Bankruptcy Code sections 727(a)(3) and (a)(5). Section 727 provides that the court shall grant the debtor a discharge, unless:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case

11 U.S.C. § 727(a)(3).

The Estate alleges that Jahrling's refusal to provide information showing what occurred with the inheritance from his mother despite having been ordered to comply with a Federal Rule of Bankruptcy Procedure 2004 examination made it impossible to identify whether his schedules were accurate. The Court finds otherwise. Trial testimony established that the Estate has been given all required information. The Court will not deny Jahrling a discharge on this ground.

Section 727 provides that the court shall grant the debtor a discharge, unless (a)(5) "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities . . . ." The Estate again asserts that Jahrling's failure to provide information showing what occurred with the inheritance from his mother supports denying him a discharge. The Court disagrees. There was substantial evidence presented at trial that Jahrling disclosed information relevant to his financial condition and all relevant transactions. There are no unexplained losses or deficiencies of assets. The Court will not deny Jahrling a discharge on this ground.

### III. Conclusion

The Plaintiff, the Estate of Stanley Cora, has satisfied its burden of proving by a preponderance of the evidence that the Defendant John C. Jahrling committed a defalcation as a fiduciary to Stanley Cora under section 532(a)(4) of the Bankruptcy Code. Judgment will be entered in favor of the Plaintiff, the Estate of Stanley Cora, and against the Defendant, John C. Jahrling, on Count I of the Amended Complaint. The Court finds that the $26,000 legal malpractice judgment is nondischargeable.

The Court will enter judgment against the Plaintiff, the Estate of Stanley Cora, and in favor of the Defendant, John C. Jahrling, on Count II - the section 523(a)(6) allegations. The Court will enter judgment against the Plaintiff, the Estate of Stanley Cora, and in favor of the Defendant, John C. Jahrling, on Count III- the section 727(a)(3) and (a)(5) allegations.

This Amended Memorandum Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Judgment Order was entered herein on August 11, 2014. That Judgment Order stands.

Dated: August 21, 2014                   ENTERED:   *Jacqueline P. Cox*

_____
Jacqueline P. Cox
United States Bankruptcy Judge

-21-